ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION




| | | |
|---|---|---|
| WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, as Trustee for the Certificateholders of First Union-Lehman Brothers-Bank of America Commercial Mortgage Pass-Through Certificate, Series 1998-C2 | § | |
| and | § | |
| ORIX CAPITAL MARKETS, L.L.C., | § | CIVIL ACTION NO. 3-02CV1945-M |
| Plaintiffs, | § | |
| vs. | § | |
| WACHOVIA BANK, NATIONAL ASSOCIATION, f/k/a FIRST UNION NATIONAL BANK, and d/b/a WACHOVIA SECURITIES, | § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANT'S EXPERT WITNESSES AND BRIEF IN SUPPORT THEREOF**

Jeffrey R. Bragalone
Texas State Bar No. 02855775
Scott L. Cole
Texas State Bar No. 00790481
Jill C. Adler
Texas State Bar No. 00783517
Kimberly O'D. Thompson
Texas State Bar No. 19956200
Patrick J. Conroy
Texas State Bar No. 24012448
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

**ATTORNEYS FOR ORIX CAPITAL MARKETS, L.L.C.**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Snap-Drape, Inc. v. Commissioner of Internal Revenue*, 98 F.3d 194 (5th Cir. (Tex.) 1996)....................2

*Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087 (N.D. Cal. 2004)....................10

*Spect v. Jensen*, 853 F.2d 805 (10th Cir. 1988)....................9

*Resolution Trust Corp. v. Stroock, Stroock & Lavan*, 853 F. Supp. 1422 (S.D. Fla. 1994)....................6

*Alldread v. City of Grenada*, 988 F.2d 1425 (5th Cir. (Miss.) 1993)....................1

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548 (11th Cir. 1998)....................2, 3

*GST Telecommunications, Inc. v. Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000)....................13

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. (La.) 1983)....................1, 2

*Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001), *amended in part on other grounds*, ....................5, 14

*In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004)....................3

*U.S. for Use of N. Maltese and Sons, Inc. v. Juno Const. Corp.*, 759 F.2d 253 (2nd Cir.1985)....................3

*U.S. v. Hausmann*, 711 F.2d 615 (5th Cir. (Tex.) 1983)....................8

*U.S. v. Torniero*, 735 F.2d 725 (2nd Cir. 1984)....................8

*U.S. v. Tri-State Hospital Supply Corp.*, 74 F. Supp. 2d 1311 (CIT 1999)....................8

## STATE CASES

*Borgatello v. C.I.R.,* 2000 WL. 1172345 (U.S. Tax Ct. 2000) ....................8, 10, 12

*U.B. Vehicle Leasing, Inc. v. Atlantic Mut. Ins. Co.,* 2004 WL. 503729 (S.D.N.Y. 2004) ....................10

*Hill v. Equitable Bank, Nat. Ass'n,* 1987 WL. 8953 (D. Del. 1987) ....................9

*Green v. CBS Broadcasting, Inc.*, 2000 WL. 33243748 (N.D. Tex. 2000) ....................2

*Linko, Inc. v. Fujitsu Ltd,.* 2002 WL 1585551 (S.D.N.Y. 2002) ....................3, 8

## TABLE OF CONTENTS

I. SUMMARY OF MOTION ..... 1

II. EXPERT TESTIMONY REGARDING QUESTIONS OF LAW ..... 1

A. Testimony Regarding The Appropriate Measure or Legal Theory of Damages ..... 2

B. Testimony Arguing That Plaintiffs' Damages Are Speculative ..... 6

C. Testimony Regarding What Is Relevant Or Material ..... 6

D. Testimony Regarding What Plaintiffs Are Required To Prove In Order To Prevail ..... 9

III. DEFENDANT'S EXPERTS FUNCTION MERELY AS ADVOCATES ..... 10

IV. DEFENDANT'S EXPERTS IMPROPERLY SPECULATE ..... 12

V. CONCLUSION ..... 14

Plaintiff ORIX Capital Markets, L.L.C., formerly known as ORIX Real Estate Capital Markets, L.L.C. ("ORIX"), hereby submits its motion to exclude certain opinions of Defendants' experts, Anthony Sanders, James Callahan, Kathryn Marquardt, Joseph Norton, Brian Olasov, and Marcus Grunewald (collectively "the Defense Experts").

## I. SUMMARY OF MOTION

An examination of the work of the Defense Experts reveals that Wachovia is attempting to defend this case, in essence, by changing the subject. Rather than addressing the merits of ORIX's expert work, the Defense Experts spend much of their effort attempting to debate the legal viability of the damage claims and theories of recovery and arguing about the "relevance" or "materiality" of the evidence against Wachovia. In so doing, the Defense Experts attempt to place themselves in the Court's position and purport to opine on how the Court should assess the *legal theory* of ORIX's damage claims and how the Court should rule on *evidentiary* issues. The Defense Experts repeatedly proffer opinions on issues of law, pontificating on everything from the proper measure of damages, to the relevance of evidence, to what plaintiffs are required to prove in order to prevail. This is not the proper subject of expert testimony, and, as such, this proffered testimony should be excluded at trial.

## II. EXPERT TESTIMONY REGARDING QUESTIONS OF LAW

Experts cannot testify regarding issues of law. In *Alldread v. City of Grenada*,[1] the Fifth Circuit held that "Federal Rule of Evidence 704 does not permit [an] expert to state legal conclusions."[2] The Fifth Circuit reiterated in *Snap-Drape, Inc. v. Commissioner of Internal*

---

[1] 988 F.2d 1425 (5th Cir. (Miss.) 1993).

[2] *Id.* at 1436-1437 (citing *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. (La.) 1983) ("Rule 704 … does not … allow a witness to give legal conclusions").

*Revenue*[3] that the federal rules "do not allow an expert to render conclusions of law."[4] Indeed, "the Fifth Circuit has *repeatedly* held that legal opinions are not a proper subject of expert testimony."[5]

Of course, the reason for this rule – as emphasized by the Fifth Circuit – is that "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."[6] Of particular significance here, an expert economist's "opinions regarding the legal standards applicable to the case are outside of his competence as an economist" as well and should be excluded for that additional reason.[7] The Defense Experts repeatedly violate these prohibitions in pursuit of what is largely a legal defense to the claims in this litigation—namely that the damages sought are somehow legally unrecoverable and that the relevant contracts should not be interpreted in a way that would impose liability on Wachovia. These are matters for the Court to decide on the legal merits, and the law does not allow the Defense Experts to insinuate themselves into these legal disputes.

### A. Testimony Regarding The Appropriate Measure or Legal Theory of Damages

The clearest example of the Defense Experts' attempt to argue the law is found in the damages context. A review of the work of the Defense Experts who address damages—primarily Sanders, Callahan, and Olasov—shows that they are first and foremost engaged in a critique of the legal theory under which damages are sought in this case. Wachovia's damages experts take issue with ORIX's legal theory for damages—that the missing documents would

---

[3] 98 F.3d 194 (5th Cir. (Tex.) 1996).

[4] *Id.* at 198 (Accountant cannot testify regarding whether "position taken by the Treasury Department was ... reasonably foreseeable [before it was published]").

[5] *Green v. CBS Broadcasting, Inc.*, 2000 WL 33243748, *4 (N.D. Tex. 2000) (emphasis added).

[6] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. (La.) 1983).

[7] *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 567, n. 27 (11th Cir. 1998).

have reduced the value of the mortgage-loan assets sold in 1998, the time this transaction closed. App. 451-453 (Roulac Report, Pages 1-3) This is because the lack of documents and document destruction increases the risk attendant to the mortgage loans and therefore lowers the amount the investors would pay for them. *Id.* The Defense Experts argue that this is the wrong approach and that the "appropriate measure of damages" is to wait to see if, over time, the lack of documents has a demonstrable affect on the "performance of the loans"[8]—regardless of what was paid for them in 1998.

This line of attack is legal in nature. Wachovia is, of course, entitled to make its legal argument to the Court, but it is not entitled to bootstrap its position on legal matters with expert testimony. An expert who "characteriz[es] the measure of damages" "gives [an] impermissible opinion[ ] on [an] issue[ ] of law."[9] It is for the "Court ... to instruct the jury on the measure of damages."[10] That is because "the measure of damages ... is a *question of law*."[11] Of course, the rule barring expert testimony on the measure of damages is consistent with the broader principle that "an expert ... may not ... communicate 'a *legal standard* – explicit or implicit – to the jury.'"[12]

Here, Wachovia's damages experts repeatedly opine about the appropriate measure of damages in this case – even though defense expert Sanders admits that "it's up to the *Court* to

---

[8] App. 10 (Sanders Report, Page 3, ¶ 9); *see also* App. 447.1 (Olasov Dep. 87: 1-6) (Q: What do you mean by "actual damages"? A: That the trust has actually lost money as a consequence either of the increased administrative costs or as a consequence of an impact on a defaulted mortgage loan and the resolution of that defaulted mortgage loan.).

[9] *Linko, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551 at *3 and n. 5 (S.D.N.Y. 2002) (Expert who testified regarding measure of damages rendered impermissible opinion on issue of law).

[10] *Linkco, supra*, 2002 WL 1585551 at 5.

[11] *Id.* at *3 (emphasis modified); *U.S. for Use of N. Maltese and Sons, Inc. v. Juno Const. Corp.*, 759 F.2d 253, 255 (2nd Cir.1985).

[12] *In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 541 (S.D.N.Y. 2004) (emphasis added).

make a decision about ... the appropriate measure" of damages. App. 402 (Sanders Dep. 183:8-17).[13] Ironically, the most egregious offender is Sanders himself. Undaunted by his admission that the appropriate measure of damages is a question of law, Sanders testifies that "[t]he appropriate determination of damages requires the specific identification of the affected loans." App. 13 (Sanders Report, Page 6, § VI.). Then, Sanders goes on to say that "[t]he appropriate measure of damages in this case is to first determine which loans are not performing, and then whether any lack of material documentation was responsible for the failure to perform" (App. 14 (Sanders Report, Page 7, ¶ 22)) and, similarly, that "[t]he appropriate measure of damages for the defendant's alleged actions is to determine how the lack of documentation has affected the performance of the loans in the pool on a loan-by-loan basis." App. 10, 23 (Sanders Report, Page 3, ¶ 9 and Page 16, ¶ 43). Sanders' other measure-of-damages testimony includes:

- "Damages would be capped at the amount of" the "increase[d] ... transaction costs." App. 10, 24 (Sanders Report, Page 3, ¶ 11 and Page 17, ¶ 45).
- "This would still not be an appropriate measure of damages in this case." App. 19 (Sanders Report, Page 12, ¶ 32).
- "[T]his is an appropriate method of calculating damages." App. 400 (Sanders Dep., Page 180:13-19).
- "This formula in Exhibit B ... is ... in [my] opinion ... an *appropriate measure of damages* for this particular case." App. 400, 401 (Sanders Dep., Page 180:24 – 181:14).

Sanders is not alone in launching attacks on the legal theory of damages in this case. Brian Olasov is equally willing to opine about this question of law. Olasov also testifies

[13] Emphasis added. Please note that unless otherwise indicated, all emphases to statements from the Defense Experts' reports and deposition testimony have been added.

generally about the measure of damages,[14] and he puts particular focus on the *date* on which damages should be measured.

Specifically, Olasov opines that "[o]n a seasoned transaction of this nature, there is no reason to rely on imperfect analogies such as no-doc residential mortgages or the sale of residential mortgages from failed lending institutions from ten years ago when actual loan experience can be analyzed." App. 180 (Olasov Report, Page 2). Then, he testifies that "[i]n my opinion, *that's [1998] not the right time to consider.* The right time to consider is looked at from today's perspective, and that's the opinion I have on the record." App. 448, 449 (Olasov Dep., Pages 179:25 – 180:6). The problem, of course, is that the time at which damages are measured depends upon the legal theory of damages—and that is a question of law.

The above testimony is hardly surprising, though, as the express, assigned "task" of at least one of the Defense Experts, Anthony Sanders, was to *"determine the appropriate measure of damages* for defendant's alleged conduct." App. 9 (Sanders Report, Page 2). Thus, the "[expert's] assignment was flawed from the outset." *Primavera Familienstifung v. Askin*[15] ("Given [the expert's] assignment, it is perhaps unsurprising that the [expert's] report is permeated with inadmissible legal opinions and conclusions directed at telling the jury what result to reach.").

In short, Wachovia cannot substitute expert testimony for legal analysis on the proper measure of damages, and the Defense Experts' testimony identified herein is improper and should be stricken.

---

[14] For example, he opines, based upon a study of loan defaults in the commercial mortgage-backed securities' industry, that "actual damages" in this case "equals zero." App. 188-189 (Olasov Report, Pages 10-11). He implicitly concludes that "actual damages" are measured by loan defaults over the life of the mortgage loans. ORIX disputes Olasov's legal conclusion, and the question of whether other measures of "actual damages" are available is for the Court to decide.

[15] 130 F.Supp.2d 450 (S.D.N.Y. 2001), *amended in part on other grounds,* 137 F.Supp.2d 438 (S.D.N.Y. 2001).

**B. Testimony Arguing That Plaintiffs' Damages Are Speculative**

The Defense Experts further attempt to attack the legal foundation of the damage claims by arguing that the damages are "speculative." For example:

- "Plaintiffs ... are seeking to be compensated for *damages that may or may not occur in the future* rather than damages that have actually occurred." App. 13 (Sanders Report, Page 6, ¶ 18).
- "Dr. Roulac is seeking *damages* in the present *which may never actually materialize* future." (sic) [Plaintiffs' expert] "This is tantamount to seeking windfall profits." App. 20 (Sanders Report, Page 13, ¶ 36).
- "[I]n a CMBS transaction, it is *only a remote possibility that repurchase would even be required* under the securitization documentation." App. 129 (Norton Report, Page 57).
- "1998-C2 ... is even *less likely to be affected in the future* as a result of the increasing staleness of any information at issue." App. 181 (Olasov Report, Page 3).
- "Being able to determine the actual worth of that documentation to the Trust, however, is a mystery." App. 219 (Grunewald Report, Page 18).

Putting aside the fact that the characterization of the damages as "speculative" presumes that the Defense Experts' proposed legal theory of damages (future loan losses) is correct, the characterization itself encroaches upon questions of law. *See Resolution Trust Corp. v. Stroock, Stroock & Lavan,*[16] ("the degree to which the [plaintiff's] damage theories rest on speculation raises ... questions of law"). As such, the testimony should be stricken.

**C. Testimony Regarding What Is Relevant Or Material**

The Defense Experts also attempt to address legal matters outside of the damages context, including discussion about what they believe is relevant (or irrelevant) and material (or immaterial). Some of the most flagrant examples come from Joseph Norton, who proclaims that "the Huber Opinion [one of ORIX's experts] is wholly misplaced and *irrelevant* as to the judicial

---

[16] 853 F.Supp. 1422, 1429 (S.D. Fla. 1994).

determination of this basic contract/contract interpretation case" App. 74 (Norton Report, Page 2).[17] Norton also offers his view that the Federal banking regulations that ORIX's expert, Professor Huber, cited in discussing Wachovia's unwritten document destruction policy are not "*relevant* to the determination of the issues at hand as to what documents ought to be delivered or not, under the contracts." App. 431, 432 (Norton Dep., Pages 91:9 – 92:5). He adds, "[f]or the benefit of this Court, Professor Norton[18] wishes ... to provide his independent, professional best legal judgment why there is *nothing of material relevance* in the Plaintiff's Second Amended Complaint as to which the Huber Opinion relates." App. 75 (Norton Report, Page 3).

Then, Norton frames the issue further, stating, "What then are the *relevant* federal prudential regulations/supervisory practices examination process that could possibly be *relevant* to this instant case?"[19] After positing his "relevance" question, Norton proceeds to testify that:

- "[S]uch guidelines and rules are wholly *irrelevant*." App. 113 (Norton Report, Page 41).
- "The Huber Opinion fails to recognize that, under the *relevant* contract document (the MLPA), documents related to 'the internal credit analysis' of First Union ... were expressly excluded from any document retention/delivery obligation to the Depositor/Issuer." App. 122 (Norton Report, Page 50).
- "[P]rior to the closing of the 1998 CMBS securitization, all contracting parties under the MLPA and under the separate PSA (and here particularly Criimi Mae) were given full access by First Union and FUCMS to all *relevant* securitization pool loan documentation." App. 131 (Norton Report, Page 59).
- "[T]he OCC[20] real estate lending and other real estate owned regulations are in [my] opinion ... *irrelevant* as to the ultimate determination of this case." App. 431 (Norton Dep. 91:2-7).

---

[17] Emphasis in original; additional emphases in original deleted.

[18] For some reason, Professor Norton refers to himself in the third person throughout his report.

[19] App. 113 (Norton Report, Page 41).

- "I don't believe the regulatory issues are *relevant* to the determination of this case." App. 440, 441 (Norton Dep. 197:20 – 198:4).

Norton is not the only expert who is anxious to opine about relevancy and materiality. For example, Grunewald adds:

- "The 'document' purported [by ORIX] to be missing is *of no consequence* given that the special servicer re-underwrote and re-documented the loan when a new borrower assumed the loan. This is equivalent to making a brand new loan and if any specific documentation was not available from origination of the first loan, it *does not matter*, because the second loan was fully documented." App. 216 (Grunewald Report, Page 15).

Attempts such as this to have experts opine about relevance and materiality are improper. *See Linkco, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, *3 (S.D.N.Y. 2002) (holding that "[an expert] gives [an] impermissible opinion[ ] on [an] issue[ ] of law" when he "stat[es] that a 'hypothetical negotiation assumes that [plaintiff] and [defendant] ... each had reasonable knowledge of all *relevant* facts.") (emphasis added). The reason, of course, is that "[r]elevance is a question of law to be decided by the trial judge."[21] The Fifth Circuit (and other courts) concur that "[u]pon reasons so well known that their repetition is unnecessary it is uniformly held that *relevancy is a question of law*."[22] Thus, it is not the proper subject of expert testimony.

Likewise, an expert cannot testify regarding what is *material* or *immaterial.* As held in *U.S. v. Jacques Dessange, Inc.*,[23] "[t]he issue of materiality is for the jury to decide and the expert may *not* tender his opinion on that issue." Similarly, in *Hill v. Equitable Bank, Nat.*

---

[20] "OCC" refers to the Office of the Comptroller of the Currency, which is the source of the Federal banking regulations discussed by Norton.

[21] *U.S. v. Torniero*, 735 F.2d 725 (2nd Cir. 1984) (superseded by statute on other grounds) (emphasis added).

[22] *U.S. v. Hausmann*, 711 F.2d 615, 617 (5th Cir. (Tex.) 1983); *U.S. v. Tri-State Hosp. Supply Corp.*, 74 F.Supp.2d 1311, 1314 (CIT 1999) (emphasis added).

[23] 2000 WL 294849, *3 (S.D.N.Y. 2000) (emphasis added).

*Ass'n,*[24] the Court excluded an "expert's testimony concerning whether … facts omitted or misrepresented by … [a] bank were *material.*"

**D. Testimony Regarding What Plaintiffs Are Required To Prove In Order To Prevail**

Finally, Wachovia offers expert testimony purporting to establish the elements that Plaintiffs must prove in order to prevail. Most obviously, Sanders wants to dictate that *"[p]laintiffs must … demonstrate* that they have suffered some loss and that the lack of documentation caused the loss" (App. 10, 23 (Sanders Report, Page 3, ¶ 10 and Page 16, ¶ 44)) and, similarly, that *"[p]laintiffs must demonstrate* that a loss has occurred on a loan and that the loss was due to the lack of material documentation." App. 12 (Sanders Report, Page 5, ¶ 16). Then, hoping to teach the Court that the plaintiffs must prove causation, Sanders plans to testify that "Dr. Roulac [ORIX's expert] fails to establish the *necessary link* between the deterioration in the performance of the underlying loans and the destruction of the documents (net of economic deterioration)." App. 19, 20 (Sanders Report, Pages 12-13, ¶ 34). Such invasions of the Court's province should not be allowed.

As set forth in *Specht v. Jensen,*[25] an expert cannot "direct the jury's understanding of the legal standards upon which their verdict must be based," or otherwise "define the law of the case."[26] Accordingly, "an expert … [can] not … define the *legal parameters* within which the jury must exercise its fact-finding function."[27] In other words, an expert cannot define the required elements of a plaintiff's claim.

---

[24] 1987 WL 8953, *1 (D. Del. 1987) (emphasis added).

[25] 853 F.2d 805 (10th Cir. 1988).

[26] *Id.* at 810.

[27] *Id.* at 809-810 (emphasis added).

## III. DEFENDANTS' EXPERTS FUNCTION MERELY AS ADVOCATES

An expert is not allowed to be an *advocate* for one of the parties. As stated in *Hewlett-Packard Co. v. EMC Corp.,*[28] "*[e]xperts are not advocates* in the litigation but sources of information and opinions." Similarly, in *U.B. Vehicle Leasing Inc. v. Atlantic Mut. Ins. Co.,*[29] the Court emphasized that *"the expert's role is not to be an advocate* who, in essence, is supplanting the role of counsel in making an argument to the jury." And in *Borgatello v. C.I.R.,*[30] the Court concurred "expert testimony is not useful when the expert is *merely an advocate* for the position argued by one of the parties."

Here, the Defense Experts repeatedly cross the line and affirmatively advocate for the defense. For example, Norton argues that "there are no and have been no regulatory examination or regulatory enforcement actions against First Union that would indicate that theses charges [that Wachovia's document destruction policy violated federal banking regulations] are even remotely sustainable or plausible." App. 128 (Norton Report, Page 56). Similarly, Norton proclaims that "[t]he reality is that First Union has, for bank regulatory, supervisory, financial accounting and examination purposes, *well-satisfied its federal bank regulator/supervisor/examiner.*" App. 126 (Norton Report, Page 54). But in his eagerness to champion the defendants' cause, Norton overlooks the fact – later admitted at his deposition – that he has no knowledge or evidence of whether First Union's examiners knew or did not know about the Bank's unwritten document destruction policy[31] and that they obviously would have to

[28] 330 F.Supp.2d 1087, 1092 (N.D. Cal. 2004) (emphasis added).

[29] 2004 WL 503729, *8 (S.D.N.Y. 2004) (emphasis added).

[30] 2000 WL 1172345 (U.S. Tax Ct. 2000) (emphasis added).

[31] *See* App. 443, 438, 439 (Norton Dep. 225:9-16 ("I am not" "say[ing] that First Union's ... bank examiners, senior management and board of directors were fully aware, in all material respects, of ... the unwritten document destruction policy") and 143:24 – 144:6 ("I have no specific knowledge" that "the regulators were made aware of any unwritten document destruction policy.")).

know about that policy to have an opinion about it.[32] And to make matters worse, Wachovia has steadfastly refused to give Plaintiffs a bank examination report from the OCC that was provided to Wachovia's expert, Norton, and on which he relied in forming his opinions.[33] Norton concedes that the report is important,[34] and ORIX contends that this gamesmanship unfairly prejudiced ORIX's ability to explore and challenge the basis for Norton's opinions, including through the examination of bank examination records other than the one hand-picked by Wachovia to provide to its expert.

Further examples of advocacy from the Defense Experts include:

- "Professor Huber [Plaintiff's expert] never seems to realize that First Union's internal procedures, at all relevant times, were *viewed favorably by its federal regulators/supervisors/examiners*." App. 122 (Norton Report, Page 50)[35]

- "Professor Huber never saw fit to investigate or otherwise to find out that *First Union had in place complying real estate lending policies* in force at all relevant times: its *sound institutional regulatory ratings* bear this out." App. 123 (Norton Report, Page 51).

- *"One only has to consider First Union's bank and bank holding company ratings* (CAMELS, BOPEC and CRA ratings) by federal regulators during the relevant periods covered by this litigation to see how blatantly wrong and distorted Professor Huber's 'Big Picture' is." App. 118 (Norton Report, Page 46).

- "[W]hen this article [in the Gallup Management Journal] is read in its entirety, it is *highly favorable to First Union/Wachovia management*." App. 120 (Norton Report, Page 48).

- "[T]he mere fact that the loan was assumed *negates any argument ORIX makes*." App. 218 (Grunewald Report, Page 17).

---

[32] *See* App. 436, 437 (Norton Dep. 141:25 – 142:4 ("[F]or the regulators to take action against Wachovia for some untoward behavior, the regulators would have to know about that behavior.")).

[33] *See* App. 427, 428, 429, 471.1, 430, 433, 434 (Norton Dep. 23:10-12 and 34:24 – 35:6; 24:17-17 ("[I] reviewed the OCC examiner's report provided to me by Wachovia's counsel"); 39:7-13 and 131:12 – 132:23).

[34] *See* App. 428 (Norton Dep. 34:16-23 ("[T]he OCC examiner's report was an important factor underlying [my] opinions in this case")).

[35] Emphasis modified.

## IV. DEFENDANTS' EXPERTS IMPROPERLY SPECULATE

Finally, there are many examples of improper speculation within the opinions of the Defense Experts. Not surprisingly, the Defense Experts do their best to explain away Wachovia's document destruction policy and the impact thereof. However, they frequently resort to speculation in their attempts to do so. For example, in response to the claim that discovery of potential breaches has been frustrated by Wachovia's destruction of documents, Olasov speculates (without acknowledging that he is doing so) that "there have been *no[ ]" "[b]reaches* of a material nature." App. 184 (Olasov Report, Page 6). Similarly, Grunewald insists that "[t]he Trust has not lost money as a result of missing documentation; but rather the decline in value of the underlying collateral was due to other causes." App. 219 (Grunewald Report, Page 18). Grunewald's "alternate cause" theory is pure speculation.

Norton opines that "First Union's national bank examiners, senior management and Board of Directors … were fully aware, in all material respects, as to both the Bank's real estate lending activities and CMBS securitization activities." App. 125 (Norton Report, Page 53). But Norton ultimately admitted that he had no basis for this conclusion with respect to the issue at hand—namely whether the bank examiners, senior management, and Board of Directors knew about Wachovia's *unwritten document destruction policy*. App. 442.1 (Norton Dep. 224: 9-16).

Other Defense Experts speculate regarding everything from re-creation of documents ("I *assume* [re-creation of the site inspection] can be done"[36]) to discoverability of breaches ("If there were Breaches of a material nature, they would have been discovered at this point in the life of the Trust"[37]) to future damages ("[A]s time passes, the Servicer will be increasingly less

[36] App. 397 (Sanders Dep. 156:6-20).

[37] App. 184 (Olasov Report, Page 6). Similarly, Olasov opined that "[i]f breaches existed, the great majority would have surfaced this late in the deal's life." *Id.*

likely to demonstrate any impact from allegedly missing documents"[38]). Yet more examples include the following:

- "[I]f untoward practices [at Wachovia] had been found or were there, that would have prevented the merger [between First Union and Wachovia]." App. 435.1 (Norton Dep. 133:14-16)

- "[T]he merger would never have been approved unless [First Wachovia] [was] highly rated regulatorily." App. 442 (Norton Dep., Page 209:9-16).

- "[I]t could be we find the document some other place. Secondly, is it possible to have someone re-create a document based on information they have, such as hypothetically a loan application, is it possible that we could ask someone to try to re-create the information in the loan application, certainly, we could try to do that." App. 398 (Sanders Dep., Page 157:24 – 158:5).

- "[I]t was an educated guess" "on [my] part" in "arriv[ing] at … the approximate average … in terms of time or dollars." App. 403 (Sanders Dep., Page 297:18 – 298:1).

- "[I am] *assuming* that the discount … took into … specific account … the missing documentation," although *"I have no evidence* that the discount … was made greater or lesser by the missing documentation." App. 405, 406 (Sanders Dep., Page 302:8 – 303:14).

- "[I]n the Chancellor Care Center loan, ORIX insisted on moving the loan to Special Servicing even though the sub-servicer could have solved the problem with a simple phone call." App. 220 (Grunewald Report, Page 19).

- In opining that "'[t]here is a market belief that as time goes on, the usefulness of documentation provided by a borrower prior to securitization erodes materially,' … 'erodes materially' is … *speculative.*" App. 410 (Callahan Dep. 315:22 – 318:5).

- My opinion that "'the missing financial data of the borrowers and other information from origination would not weigh heavily into the analysis' … is a speculation …" App. 413 (Callahan Dep. 318:17 – 320:8).

Experts are not allowed to speculate improperly. "Testimony from an expert, predicated on 'subjective belief' and 'unsupported factual speculation' violates the Supreme Court's directions for expert testimony in *Daubert.*"[39]

[38] App. 196 (Olasov Report, Page 18).

[39] *GST Telecommunications, Inc. v. Irwin,* 192 F.R.D. 109, 111 (S.D.N.Y. 2000) (emphasis added).

Finally, it is especially clear that "statements concerning the parties' *intent* with respect to [an] … agreement … stray[ ] outside the scope of proper expert testimony"[40] because they are speculative. Here, the defendants offer just such speculation by defense expert Marquardt—who had no firsthand knowledge of the contracts in question but nevertheless attempts to testify about the parties' intent and the intent of the contractual terms:

- "The delivery provision of the PSA is *designed* to provide the Master Servicer with the documents that enable it to "... service and administer the Mortgage Loans..."" App. 58 (Marquardt Report, Page 10).
- "The language in Section 2(e) of the MLPA and Section 2.01(d) of the PSA is *intended* to provide for the delivery of the remaining Loan Documents along with any servicing documents to the Master Servicer." App. 58 (Marquardt Report, Page 10).
- "Section 2(e) of the MLPA and Section 2.01(d) of the PSA are *intended* to provide for delivery of the remaining Mortgage Loan closing documents and servicing documents to the Master Servicer." App. 58 (Marquardt Report, Page 10).
- "[A]s I read this provision, I believe that what the *intent* was … would be to get the documents beginning at the closing date." App. 419 (Marquardt Dep., Page 138:9-14).
- "[T]he category of documents that 'evidence, govern or secure the mortgage loan and are not required to be delivered to the trustee' … are the documents that [I] believe are *intended* to be sent to the master servicer under this particular deal." App. 420 (Marquardt Dep., Page 167:5-14).

This testimony is inadmissible speculation and should be excluded.

## V. <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, ORIX prays that the Court order that the Defense Experts be barred from testifying regarding the topics and opinions set forth above. Plaintiffs further pray for such other and further relief to which they may be entitled.

---

[40] *Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 529 (S.D.N.Y. 2001), *amended in part on other grounds*, 137 F.Supp.2d 438 (S.D.N.Y. 2001) (emphasis added).

Dated: October 15, 2004

Respectfully submitted,

**McKool Smith, P.C.**

Jeffrey R. Bragalone
Texas State Bar No. 02855775
Scott L. Cole
Texas State Bar No. 00790481
Kimberly O'D. Thompson
Texas State Bar No. 19956200
Patrick J. Conroy
Texas State Bar No. 24012448

300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

ATTORNEYS FOR ORIX CAPTIAL MARKETS, L.L.C.

**CERTIFICATE OF CONFERENCE**

The parties conferred by e-mail on this motion, but could not reach an agreement. Therefore, the motion is submitted to the Court for consideration.

by permission

Scott Cole

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been delivered via hand delivery and email to the following counsel of record on October 15, 2004.

Molly Steele
Thompson & Knight, LLP
1700 Pacific Avenue, Suite 3300
Dallas, Texas 75201

Susan Shelton
Sullivan, Parker & Cook, LLC
2911 Turtle Creek
1200 Park Place Building
Dallas, Texas 75219

Patrick Conroy